UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD LEE HENDERSON,            CIVIL NO.: 2:07-CV-12753
                                  CRIM NO.: 2:04-CR-80013
            Petitioner,
                                  HON. GERALD E. ROSEN
vs.                               MAG. JUDGE STEVEN D. PEPE

UNITED STATES OF AMERICA,

            Respondent.

_____/

**REPORT AND RECOMMENDATION**
ON
**RICHARD LEE HENDERSON PETITION FOR WRIT OF HABEAS CORPUS (DKT. # 46)**

On October 28, 2004, Petitioner Richard Lee Henderson ("Petitioner") was convicted of

Felon in Possession of a Firearm Following Three Serious Felon Convictions, in a jury trial in the

Eastern District of Michigan before the Hon. Gerald E. Rosen. Petitioner has now filed a timely

habeas petition under 28 U.S.C. §2255 challenging his conviction and sentence. This matter has

been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons

indicated below, it is **RECOMMENDED** that this Petition be **DENIED**.

I.     **BACKGROUND**

On October 28, 2004, following a three-day jury trial, Petitioner was found guilty. The

facts testified to at court were as follow:

On June 11, 2003, Two Detroit Police Officers were on routine patrol when they were

called to respond to complaints of loitering and narcotic sales taking place outside of the Lucky

Liquor party store.  They saw Petitioner drinking alcohol from a forty-ounce bottle covered by a paper bag on the sidewalk in front of the party store.  The officers approached Petitioner because they observed the outline of what appeared to be a gun in Petitioner's right pocket. After a struggle with the officers, the officers saw Petitioner remove a silver handgun from his pants pocket and drop it to the ground. One of the officers kicked the gun under the squad car. The officers recovered a loaded Smith & Wesson .9mm semi-automatic pistol.  Although there were people in the area, the officers testified at trial that no one, including a woman they interviewed at the scene, witnessed the arrest.

After being arrested, the officers took Petitioner to the hospital where he was treated for a shoulder contusion from being thrown to the ground and heroin withdrawal.  The medical record shows some bruising but "no obvious distress" or signs of any significant injury of the shoulder or other area  (Case # 04-CR-80013, Dkt.#  # 53, Exh. 1).  It notes his being uncooperative during the medical triage and states that "[h]e also says that he is a heroin addict, snorting it and he has not had any for a while and is having what he calls withdrawal.".  He was discharged to police custody with Motrin 600 mg and Maalox and Clonidine 1 mg twice daily for heroin withdrawal.

On July 12, 2003, Petitioner was charged and arraigned in Michigan State Court of Felon in Possession of a Firearm, Carrying a Concealed Weapon and Felony Firearm.  On June 20, 2003, Petitioner was appointed counsel from the State Defenders Office, Erika Tusar, who had a brief opportunity to meet with Petitioner prior to the pre-preliminary examination ("pre-exam") held the same day.  The two discussed the case and she advised Petitioner that she would seek a plea offer from the state prosecutor on his behalf.  The state case was dismissed

because of federal prosecution under the Project Safe Neighborhood initiative (PSN) without a formal plea offer extended from the prosecutor's office.[1]

Petitioner contends he had inadequate representation by his state court attorney who failed to obtain him a plea deal in state court that would have avoided the more extensive sentence he faced in federal court. Yet, Assistant United States Attorney Diane Marion states in an affidavit that she was Project Coordinator for the Project Safe Neighborhoods Initiative ("PSN") since 2001, and was involved in Petitioner's case. (Case # 04-CR-80013, Dkt.# # 53, Exh. 2). On or about June 16, 2003, AUSA Marion had discussions with the Wayne County Assistant Prosecutor assigned to review state gun cases and it was decided that in light of Petitioner's extensive prior criminal record the case met the PSN guidelines for federal prosecution and the state would not offer any reduced plea to Petitioner to resolve he matter at the state court level. (*Id.*) On June 19, 2003, a federal criminal complaint was filed against Petitioner charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (Case # 04-CR-80013, Dkt. # 1). On January 6, 2004, the grand jury indicted Petitioner on one count violations of being a Felon in Possession of a Firearm Following Three Serious

---

[1] As detailed by this Court in *United States v. Gray*, 382 F. Supp.2d 898, 901 (E.D.Mich.2005)**,** the joint federal/state program known as "Project Safe Neighborhoods" ("PSN"), is a crime reduction initiative developed by the U.S. Department of Justice. Under PSN the U.S. Attorney's Office in Detroit consults with the local Wayne County Prosecutor's Office to determine the most appropriate jurisdiction in which to prosecute firearm-related offenses. If a particular defendant meets certain specified PSN criteria, he may be given an opportunity to plead guilty in state court to a state felony firearm offense in lieu of federal prosecution. In certain cases with defendants having more serious criminal records meeting certain other specified PSN guidelines, the state defers to federal prosecution. Under the PSN initiative state and federal prosecutors coordinate their charging and plea bargaining decisions so that a plea in one jurisdiction will foreclose prosecution in the other. *Gray,* 382 F. Supp.2d at 907-08.

Felony Convictions under 18 U.S.C. § 922(g) and 18 U.S.C. § 924(e). (Case # 04-CR-80013, Dkt. # 2).

On February 11, 2004, Petitioner was arraigned on this federal charge and pled not guilty (Case # 04-CR-80013, Dkts. #2 and 8). Petitioner was appointed counsel, Federal Defender Jonathan Epstein and trial was set for March 4, 2004. On March 3, 2004, a plea offer was made to the Petitioner to plea guilty as charged with a sentence agreement of 180 months, the minimum statutory penalty under 18 U.S.C. § 924(e). Petitioner rejected the plea agreement offered by the federal attorney. Trial did not commence as scheduled, instead, Judge Gerald E. Rosen signed a stipulated agreement for an extension of motion cut - off date to allow defense counsel to investigate further the case. On May 17, 2004, another stipulation extending the motion cut-off date was entered into to allow defense counsel the opportunity to locate a believed-to-be exculpatory witness, Ms. Melanie Howard. On July 28, 2004, a third stipulation was entered to extend the plea cut-off date and the trial date until October 5, 2004. Subsequently, at the request of Petitioner's counsel, the trial date was re-scheduled for October 26, 2004.

On October 21, 2004, Petitioner's counsel again sought to adjourn the scheduled trial date. (Case # 04-CR-80013, Dkt. # 16). The government objected to a further adjournment based upon defense counsel's prior and consistent representations that despite earnest efforts, he was unable to locate Ms. Howard. On the morning of trial the district judge addressed Petitioner's two motions – to adjourn and to withdraw as counsel. The district court denied the motions, ruling that the witness could not be found and there was no basis for removing defense counsel, a competent and seasoned federal defender. After a two day trial, on October 28, 2004,

Plaintiff was found guilty of Count 1 of having three prior serious felonies and being in possession of a firearm. (Case # 04-CR-80013, Dkt. # 22 & # 23)

On December 17, 2004, the defense attorney sought to withdraw as counsel. (Case # 04-CR-80013, Dkt. # 24). On February 3, 2005, the motion was granted and Attorney Tracie Palmer was appointed to represent Petitioner (Case # 04-CR-80013, Dkt. #23 & #28). On March 28, 2005, Petitioner was sentenced at the bottom of the guidelines to a term of imprisonment of 235 months to be followed by a term of supervised release of three (3) years (Case # 04-CR-80013, Dkt. # 40).

On March 30, 2005, Petitioner filed a Claim of Appeal. The appeal alleged that Petitioner's prosecution under the Project Safe Neighborhoods (PSN) program was unconstitutionally race based; that the district court's decision to deny his request for continuance and for withdrawal of counsel was an abuse of discretion; his trial counsel was constitutionally ineffective; and the evidence introduced at trial was insufficient to sustain his conviction.

On March 30, 2006, the Sixth Circuit Court of Appeals affirmed the district court and Petitioner's conviction. The court of appeals found that Petitioner's selective prosecution claim was waived because he did not raise the claim in the district court adding that was no evidence to show discriminatory intent or effect. Further, the court of appeals held that the district court's denial of the motion for continuance was not an abuse of discretion because defense counsel had told the court that he had diligently searched for the witness and additional time would not necessarily result in locating the witness. Petitioner did not demonstrate that he suffered

any prejudice with regard to absent witnesses from the denial of the continuance.

With regard to the sufficiency of the evidence claim, the appeals court noted that defense made a Rule 29 motion for acquittal at the close of the prosecution's case and at the close of the case, which was denied. The appeals court held that the district court found the witnesses' testimony to be credible, and the jury's determination of guilt would not be disturbed. Finally, the appeals court held that the record was insufficient to effectively evaluate whether trial counsel's alleged failures prejudiced Petitioner's defense at trial. The court of appeals declined to review Petitioner's ineffective assistance of counsel claim pertaining to his appointed counsel in the federal case.

Petitioner files the present motion seeking relief from his sentence pursuant to 28 U.S.C. §2255 claiming: (1) the district court lacked subject matter jurisdiction to adjudicate his case; (2) he was denied effective assistance of counsel by his federal court appointed counsel; (3) he was denied effective assistance of counsel by his state court appointed counsel and (4) the government prosecutor engaged in prosecutorial misconduct by allowing government witnesses to offer perjured testimony.

## II.    ANALYSIS

### A.    *Standard of Review Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)*

A prisoner seeking relief under §2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citation omitted). Where the petitioner's motion alleges a non-constitutional error, the petitioner must establish a " 'fundamental defect

6

which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990)).

In a §2255 motion, a petitioner has the burden of sustaining his contentions by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir.1980).

A petitioner is procedurally barred from raising claims in a §2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *Frady*, *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir.1996). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under §2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). The procedural default rule does not apply, however, to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir.1998); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir.1996). Consequently, such claims may be raised for the first time in a §2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir.1995). Indeed, in the present case, the Appellate Court did not pass on Petitioner's claims of ineffective assistance of counsel wanting a fuller record for review.

An evidentiary hearing is required on a § 2255 motion unless "the record conclusively shows that the petitioner is entitled to no relief." *Blanton v. United States*, 94 F.3d 227, 235

(6th Cir.1996). This would be the case where the legal theory asserted is incorrect in light of binding precedent. Also, no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *Arredondo v. United States*, 178 F.3d 778,782 (6th Cir. 1999); *Peavy v. United States,* 31 F.3d 1341, 1345 (6th Cir. 1994). *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995). As noted below on each of Petitioner's claims, there is no basis for an evidentiary hearing because of their legal insufficiency, their conclusory and unsupported nature, or the lack of support in the record.

**B.    *Subject Matter Jurisdiction to Adjudicate Case***

Petitioner argues that the district court did not have jurisdiction in the case against him because none of the charges was premised on activities relating to the Commerce Clause. Petitioner did not raise this issue on direct appeal, and therefore on procedural grounds, it is waived.

 Nor can Petitioner show cause for this procedural fault and actual prejudice based on a claim that either his trial or appellate counsel was ineffective in not raising this issue. Petitioner's position is without merit. There are no disputed facts related to this argument warranting an evidentiary hearing because the claim, even if raised by Petitioner's trial counsel pretrial, is without  merit.. Thus, it was not ineffective assistance of counsel for the trial or appellate counsel not to have raised this claim nor can one be prejudiced by failure of an attorney to raise a meritless claim. *Boag v. Raines,* 769 F.2d 1341 (9th Cir. 1985) (failure to raise meritless argument does not constitute ineffective assistance of counsel). Thus, his claim for relief on this basis should be denied.

Petitioner was charged in a one count indictment with Felon in Possession of a Firearm Following Three Serious Felony Offense Convictions, in violation of 18 U.S.C. §922(g) and 18 U.S.C. §924(e). To prevail at trial on this charge, it was necessary for the government to prove, beyond a reasonable doubt, that (1) Petitioner knowingly possessed a firearm; (2) Petitioner had three serious prior felony conviction; (3) the firearm was manufactured outside the State of Michigan, and therefore, at some time, had traveled in interstate commerce. The Sixth Circuit held that 18 U.S.C. §922(g) represents a valid exercise of legislative power under the Commerce Clause." *United States v. Turner,* 77 F. 3d 887, 889 (6th Cir. 1996) The court explained that "[r]equiring the government in each case to prove that a felon has possessed a firearm "in or affecting commerce" ensures that the firearm possession in question affects interstate commerce" *Id..* A similar argument is applicable to a criminal conviction under 18 U.S.C. §922(g) and 18 U.S.C. §924(e).

At trial, the government introduced proofs relative to a firearm being in or affecting interstate commerce. Testimony was presented by ATF Special Agent Donald Dawkins, an expert in firearms identification, that the firearm recovered by the police officers in this matter was manufactured in Springfield, Massachusetts, outside the State of Michigan. (Tr. 10/27/04, p. 70). The place of manufacture for the firearm was stamped on the outside of the gun. Accordingly, based upon his training and experience, he indicated that the firearm at some time traveled in interstate commerce (Tr. 10/27/04, p. 71). As the charges involved a firearm which had been manufactured outside the State of Michigan, and had, at some time, traveled in interstate commerce, jurisdiction of this case in the federal district court was proper.

C.     *The Effectiveness of Petitioner's Federal Appointed Counsel*

In his initial motion, Petitioner alleges several instances of ineffective assistance of counsel.  He alleges that his trial counsel, Jonathan Epstein, failed to: (1.)  challenge the ineffectiveness of his state court attorney in dealing with the Project Safe Neighborhoods program and decisions made to charge him in federal court; (2.)  find witnesses; (3.)  introduce hospital records of his injuries allegedly arising from his arrest; (4.)object to testimony elicited from a government witness; (5.) introduce photographs of the scene.  On each claim, for reasons noted below, Petitioner's generalized assertions unsupported by any reference or submission of factual evidence by affidavit or otherwise, sufficient to support them do not warrant an evidentiary hearing.

The Supreme Court has established a two-prong test for determining whether counsel's performance was ineffective for Sixth Amendment purposes:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In evaluating alleged prejudice resulting from ineffective assistance of counsel, "[i]t is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted).  Rather,

Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard to be applied is not that of a hypothetical perfect counsel, but that of reasonably effective counsel under prevailing professional norms. *Strickland*, *supra*, 466 U.S. at 687-88. The fundamental test of effective assistance of counsel is whether counsel "bring[s] to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id*.

When evaluating counsel's performance under the *Strickland* test, the Sixth Circuit has emphasized that "[a] reviewing court must give a highly deferential scrutiny to counsel's performance. . .". *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). This is based on the well-established principle that legal counsel is presumed competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), *aff'd without opinion*, 972 F.2d 348 (6th Cir. 1992), *cert. denied*, 507 U.S. 917 (1993). As the Court in *Strickland* stressed:

> it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

466 U.S. at 689.

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard

of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  A fair assessment of  Petitioner's counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, so as to reconstruct the circumstances of his challenged conduct, and to evaluate the conduct from his perspective at the time.  *Stickland*, *supra*, 466 U.S. at 689.

*(1) Challenge to the Ineffective Assistance of State Counsel and Charging under the Project Safe Neighborhoods Program.*

Petitioner alleges that his federal counsel's representation was ineffective in that he failed to challenge ineffectiveness of his state public defender for not getting a plea deal to avoid the federal prosecution under the national Project Safe Neighborhoods Program (PSN).[2] As noted below, there is no dispute of material fact that the state prosecutor did not offer any plea to Plaintiff.  Absent such a preliminary fact this court has no jurisdiction to review the adequacy of Petitioner's representation at the state level. *United States v Robinson*, 408 F. Supp 2d 437 (E.D. Mich. 2005)(Rosen, J.).  As in the case of *Ross v. United States,* 339 F.3d 483, 493 (6th Cir. 2003), a Petitioner's counsel cannot be found to have been ineffective for failing to react to plea bargain offer that the government never made.  As in *Ross,* "Petitioner offers no evidence that his counsel (or anyone else) could have negotiated a plea that would have guaranteed" a reduced sentence in state court and no federal prosecution.  Petitioner's conclusory and unsupport assertion that the state prosecutor intended to do so is insufficient to

---

[2] *Moss v. United States,* 323 F.3d 445, 474 (6th Cir.2003), makes clear that the two-pronged analytical framework of *Strickland v. Washington,* 466 U.S. 668 (1984), applies to constitutional challenges to an attorney's performance during the course of plea negotiations.

give this Court jurisdiction to warrant this Court probing into the happenings in the state court. As noted below, the disputed fact is that there was no state prosecution of a plea agreement that would have avoided federal prosecution.   Thus, as in *Ross* there is no need for an evidentiary hearing to establish what Petitioner has no evidence to dispute – there was no state plea offer made in Petitioner's case.

Petitioner compares his case to *United States v Richard Morris*, 377 F Supp 2d 630 (E.D. MI. 2005)(Tarnow, J), *aff'd in part, rev'd in part*, 470 F.3d 596, 599 (6th Cir. 2006) and *United States v Nixon*, 315 F. Supp 2d 876 (ED MI 2004)(Feikens, J).   In these two cases ineffective assistance challenges were made to defendants being ill advised by their state court attorneys on the severe federal sentences under PSN if they did not accept a state plea offer.   In *Morris*, the defendant was given to choice to either plea at the state level to reduced charges or proceed to federal court.   Similarly, in *Nixon*, the two defendants were offered but rejected a 2 year sentence plea agreement to state gun charges and were referred for federal prosecution under PSN. Each was told they faced 5 years maximum if prosecuted under PSN, when in fact they faced minimums of 10 years for one and 22 years for the other defendant in federal court. They contend that had they been told accurate federal sentencing information they would have accepted the state 2 year plea deals to avoid the far greater risks of a federal prosecution.

In *Morris*, the defendant was offered by the state prosecutor a reduced plea on a drug and gun charge of 1- 4 years on the drug charge and a consecutive 2 years on the gun charge and avoidance of federal prosecution under PSN. *Morris,*  470 F.3d at 599.   Based on inaccurate federal guideline ranges provided by his state attorney, he rejected the deal and was referred for federal prosecution under PSN.   After the federal defender raised claims of ineffective

13

assistance of counsel at the state court level, the district court conducted an evidentiary hearing, prior to trial. The attorney who represented the defendant at the state court proceeding testified that she had not understood that defendant potentially faced a significantly higher sentence at the federal level. Instead of researching the sentencing guidelines for the two jurisdictions, she had relied upon the advice given to her by the state court PSN liaison that her client faced 62 to 68 months if prosecuted in federal court. If fact, the federal guidelines range was 90 to 97 months if defendant pled guilty, or 101 to 111 months if he did not. *Morris,* 470 F.3d at 599. Defendant Morris asserted that had the correct federal guideline range been provided him by his state defender, he would have accepted the state plea agreement and avoided the risks of federal prosecution. The district judge concluded that defendant was denied effective assistance of counsel and granted his motion to remand his case to the state court. The district court's decision was appealed. *United States v Morris*, 470 F. 3d 596 (6th Cir. 2006). The Sixth Circuit affirmed the district court's conclusion that Morris was denied effective assistance of counsel. The court, however, determined that the federal district judge lacked authority to remand the case to state court, but concluded that it did have the authority to dismiss the federal indictment in order to remedy the constitutional violation. The case was remanded to the district court for further proceedings.

The opinion of the panel never addressed the government's arguments that given the dual sovereignty doctrine of *Bartkus v Illinois*, 359 U.S. 121(1959), and the holding of *Texas v Cobb*, 532 U.S. 162 (2001), that the Sixth Amendment right to counsel is offense specific, and the federal court had no jurisdiction to address the ineffective assistance of counsel in state court. Nor did the panel ever identify a jurisdictional basis for reviewing the state court

14

proceeding.

Yet, unlike the *Nixon* and *Morris* cases where the defendants failed to accept state plea offers because of incorrect information on what they faced if charged in federal court, Petitioner was not offered a reduced plea in the state court**.** AUSA Marion in her affidavit makes it clear that in June 2003 after Petitioner's arrest by state officials, she had discussions with Wayne County Assistant Prosecutor assigned to review state gun cases and it was decided that in light of Petitioner's extensive prior criminal record the case met the PSN guidelines for federal prosecution and the state would not offer any reduced plea to Petitioner to resolve his matter at the state court level. (*Id*.)  (Case # 04-CR-80013 Dkt. # 53, Exh. 2).   Petitioner has an extensive criminal history:

> 1977 conviction for Possession with Intent to Deliver Heroin,
> 1980 conviction for Breaking and Entering an Occupied Dwelling,
> 1985 conviction for Breaking and Entering an Occupied Dwelling with Intent-3rd offense,
> 1985 conviction for Possession of Burglars Tools,
> 1977 conviction for Narcotics Possession,
> 1978 conviction for Escape-Prison,
> 1972 conviction for Larceny from a Motor Vehicle, and
> 1972 conviction for Breaking and Entering with Intent.

(Case # 04-CR-80013, Dkt.# 52, p. 16, fn 7).

 Petitioner suggests no evidence that might possibly counter Diane Marion's affidavit and indeed, he admits in his motion that the Wayne County Prosecutor never made a plea offer. Rather he contends only that the office intended to make an offer based on what he says his state defense counsel said.  Petitioner states that upon his claiming that he was not guilty to the charges in Wayne County Circuit Court, the state prosecutor informed the court that federal authorities would take custody of Henderson and the matter would be federally prosecuted.

Because it is undisputed that Petitioner Henderson was not offered a reduced plea by the state prosecutor, he cannot assert the same claims of the defendants in *Nixon* and *Morris* that he turned down a state plea offer because of the ineffective assistance of state counsel in providing mis-information about what possible sentence he faced if charged in federal court. This is not a case similar to *Nixon* and *Morris* with plea offers in state court. Rather it is more like the *Robinson* case noted above, in which there was no PSN-based plea offer was extended to Defendant in the state court proceedings.[3] This court in *Robinson* distinguished *Nixon* and *Morris* and found the federal court did not have either habeas or any PSN-based jurisdiction to review the effectiveness of the state court attorney's performance. It noted the "even assuming that a coordinated PSN-based plea bargaining process might permit this Court to look beyond the four corners of this federal case and examine the performance of Defendant's state court counsel, the factual predicate for such an exercise of authority is absent here." 408 F. Supp 2d at 442. The "factual predicate" to which the Court referred was a state court plea offer – or some other critical stage of the state proceeding to which a defendant had an entitlement to effective assistance of counsel – on which the state defense counsel might have been ineffective. As the *Robinson* opinion makes clear "there is no constitutional right to plea bargain" citing *Weatherford v. Bursey,* 429 U.S. 545, 561(1977). If the government avoids plea bargaining, then a defense counsel cannot be found to be constitutionally deficient in the advice given to a defendant.

Yet, even if this Court had jurisdiction to review the performance of the state defense

---

[3] There had been an earlier 30 year to life plea offer made to Robinson, which he rejected, but no PSN-based plea offer where a plea to state charges provided a lesser sentence than the federal charges would involve.

counsel, there is no evidence that Petitioner's state attorney Tusar provided him any mis-information other than possibly that the state prosecutor intended to offer him a two-year plea agreement.  There is no evidence that he rejected a state plea offer that would have avoided federal prosecution because he was given inaccurate information about the potential sentence if charged federally.  There is no evidence that any state defense attorney could have avoided the decision to charge this case federally without there being an offer to plea to reduced charges in state court.

Further, Petitioner's claim that he was *constructively* denied the effective assistance of counsel in the state court proceedings is also without merit. In *United States v Cronic*, 466 U.S. 648 (1984), the Court held that a defendant may establish a violation of his Sixth Amendment right to counsel "without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. at 659 n. 25; *see also Mitchell v Mason*, 325 F. 3d at 741, 742. While the state prosecutor deciding to drop the state charges in light of the federal prosecution did prevent attorney Tusar from further assisting Petitioner in the Wayne County Circuit Court, this was not this type of procedural dilemma wrongfully caused by the state that the *Cronic* case had in mine.  The decision to charge a case in state court or federal court is a decision committed to the discretion of the state and federal prosecutors. It is not something a defendant has a right to have his attorney involved in.  Thus, the decision to drop the state charges and defer to the federal prosecution – while critical to a defendant such as Petitioner  –  was not critical stage of the proceeding in which a defendant had a right to participate and be represented by counsel.  Had a state plead deal been offered with an agreement the federal charges would not be pursued, then that would be a

critical stage of the proceeding in which a defendant had a right to competent representation by counsel. But that was not the case here.

The question before this Court is whether Mr. Epstein was ineffective in not attacking the federal indictment based upon the ineffective assistance of Ms. Tusar in state court. In the absence of Petitioner having had a concrete plea offer in state court that would have avoided a federal prosecution, it cannot be said that Mr. Epstein was ineffective in bringing such a challenge to the federal indictment. Nor can it be said that there is a reasonable probability had he done so that the challenge would have been successful. On the facts considered in the light most favorable to Petitioner, there was no state plea deal offered, and thus there was no jurisdictional or Sixth Amendment basis for Petitioner's federal attorney to have challenged the performance of Ms. Tusar or to have challenged the federal prosecution brought in this case for violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 924(e). Thus, Petitioner's claim of ineffective assistance of counsel claim against Mr. Epstein on this basis is without merit.

### (2.) Inability to produce witnesses

Petitioner contends that counsel's inability to produce Melanie Howard or Damion Miller at trial denied him effective counsel. Petitioner contends these two individuals and he had been working on landscaping account that afternoon before the incident arriving at the Lucky Liquor Party Store in a Ford Tahoe Truck together. According to Petitioner, Mr. Miller went into the store, and Petitioner used an outside pay phone on the wall of the store and was with Ms. Howard. Petitioner asserts that Mr. Miller and Ms. Howard could confirm that he did not have a gun that day, though the testimony of the officers was that the gun was concealed in Petitioner's right pocket. Petitioner notes these individual are his friends, but there is no

indication that he has had any contact with them to determine what exactly their testimony might have been.

Pertaining to his counsel's inability to produce a witness Petitioner asserts was his friend, Melanie Howard, the record shows counsel made great effort to locate her prior to trial. Working with his investigator, Mr. Epstein checked at her last known address, hospitals and homeless shelters, all to no avail. Petitioner proffers no evidence that defense counsel did not exercise due diligence to secure Ms. Howard through his investigator.

Even assuming that defense counsel would have or should have been able to find and produce the witness, Petitioner has not provided any evidence by way of a declaration from Ms. Howard or otherwise, that her testimony would have created a reasonable probability of changing the results at trial. At best, he argues that she witnessed the incident involving the struggle with the police and she would have disagreed with the officers that Petitioner possessed a firearm. Yet, Petitioner offers no evidence from Ms. Howard to support this assertion. This Court need not hold an evidentiary hearing merely to document Petitioner's speculations as to what Ms. Howard would have said. The court of appeals specifically discussed that although Petitioner Henderson believed Ms. Howard witnessed the arrest, the trial testimony by the police officers was that they talked with an unidentified female at the scene, who indicated that she had not witnessed the arrest. Whether this was because she did not witness the arrest, or just did not want to be involved, or that she actually said something different is something that presently will not ever be know without finding Petitioner's one time friend, Ms. Howard.

Similarly, Petitioner Henderson claims that witness, Mr. Miller "could have refuted the account of the incident states in the police reports, and testified to at trial by Officers Jones and

Stewart" (Petitioner's Motion, p. 5L). Yet, unlike Ms. Howard, Petitioner does not indicate when or if Mr. Miller came out of the liquor store prior to the arrest but contends he saw everything from inside. Again, we are faced with unsupported speculations of Petitioner as to what Mr. Miller would have said.

Attorney Epstein apparently spoke with Mr. Miller prior to trial but decided not to present Mr. Miller or his testimony at trial. In asking for a continuance on the day of trial, Attorney Epstein did not mention the need to secure Mr. Miller's presence. Petitioner acknowledges that Attorney Epstein advised that [Mr. Miller's] testimony was inconclusive because he did not see everything." (Case # 04-CR-80013, Dkt. # 46, Petitioner's Brief at p. 5-l). In the absence of any concrete evidence to the contrary that might be presented at a hearing, given the strong presumption of competence of counsel, it can be assumed, based on his communication with Mr. Miller and Attorney Epstein's subsequent exclusion of the witness, that it was not to Petitioner's interest to call Mr. Miller to the stand. In the absence of an affidavit or declaration from Mr. Miller or some other reliable evidence to the contrary, there is no evidence that Mr. Miller's testimony had a reasonable probability of affecting the ultimate decision.

> To establish prejudice, Petitioner must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. When applying *Strickland,* if we can more easily dispose of an ineffective assistance claim based on lack of prejudice, we should follow that route. *Watson v. Marshall,* 784 F.2d 722, 726 (6th Cir.1985).

*Ross v. United States,* 339 F.3d 483, 492 (6th Cir. 2003)

Here Petitioner has offered no credible evidence to establish prejudice from Mr. Epstein not calling Mr. Miller to testify.

Petitioner finally indicates that Mr. Epstein was deficient in not calling Shawana Mills, Mr. Miller's girlfriend with whom Petitioner was talking on the phone when the encounter with the police occurred. He gave Officer Craig Stewart's name and badge number to her just before Stewart and Petitioner struggled. Again, we have only Petitioner's conclusory assertions that her testimony would have proved the officers Stewart's and Jones' testimony was false. As with Mr. Miller, in the absence of an affidavit or declaration from Mr. Mills or some other reliable evidence to the contrary, there is no evidence that Mr. Miller's testimony had a reasonable probability of affecting the ultimate decision.

Accordingly, because of no sufficient showing of prejudice under the second prong of the *Strickland test,* Petitioner's allegation that Attorney Epstein was ineffective for failing to produce these three witnesses must fail.

### (3.) Introduction of hospital records

Petitioner's next claim concerning his alleged ineffective assistance of counsel involves his attorney's decision not to admit his hospital records at trial (Case # 04-CR-80013, Dkt.# # 52, attachment 1). At the time of trial, when the records were considered for admission, the government refused to stipulate to them as an exhibit because they were not certified by the hospital. The records revealed no serious distress or signs of significant injury, and contain Petitioner's admission of being a drug addict who had not snorted in a while and felt he was experience withdrawal symptoms. At most, the records indicated that Petitioner was slightly bruised during a struggle with the officers during the arrest. Merely demonstrating to the jury that a struggle occurred after the arrest would not help Petitioner in his defense to the charges of Felon in Possession of a Firearm. In discussing the medical records of Petitioner and his claims

the court of appeals pointed out, "Henderson has not articulated what more the hospital record would show or how the records would aid in the defense of the felon in possession charge; therefore, Henderson has not shown that any prejudice resulted from the failure to have the records authenticated." *United States of America v. Richard Henderson*, 174 Fed. Appx. 880 (2006).

The trial judge offered a compromise to defense counsel that should he decide to introduce the records, he would be afforded an opportunity to have the records certified. Ultimately, defense counsel never sought to have the medical record put before the jury.  Under the highly deferential scrutiny due trial decisions of defense counsel under *Ward, supra,* and the presumption of competent representation stated in *Osterbrock*, absent contrary proofs, this choice of defense counsel not to pursue the use of the medical records can be presumed to be reasonable and for a strategic reason that the records were potentially more damaging than helpful to Petitioner's case because they revealed Petitioner's use of heroin.

Those records have now been produced to this Court. (Case # 04-CR-80013, Dkt.#  # 53, Exh. 1).  A review of that exhibit supports a conclusion that the trial attorney made a tactical decision short of ineffective assistance.  Yet, as with the missing witness, this Court need not resolve this issue under the first prong of the *Strickland* test. A review of the hospital records make it clear that had they been admitted and considered by the jury there is no reasonable probability the jury's decision would have been different.  Petitioner suggests no further evidence that might be presented at a hearing on this issue.

Therefore, under the second prong of the *Strickland* test, Petitioner has not shown  that he was prejudiced by the decision not to authenticate and admit the hospital records.

*(4.) Failure to object to testimony elicited from a government witness*

Petitioner claims that his counsel was ineffective for failing to object to testimony elicited during the prosecution's re-direct examination of Officer Gregory Jones. Defense counsel, during cross-examination, attempted to attack the officer's credibility with a line of questions regarding the implausibility that Petitioner would fall on his right side if he actually had a loaded gun in his pocket because such a maneuver would be dangerous. During re-direct, the officer testified that this kind of evasive action was not at all unusual under the circumstances because Petitioner was attempting to conceal his weapon (10/26/04 Trial Transcript, Vol. II, *Jones* at Tr. 64-65). It was defense counsel's initial opinion and inquiry concerning the fall that prompted the Officer's explanation of what had happened. Under those circumstances, the officer's testimony was not improper opinion testimony because he was responding to defense counsel's characterization of the fall by the Petitioner, defense counsel opened the door to this line of inquiry.

Alternatively, the Court could consider Officer Jones' testimony as lay opinion testimony based upon Officer Jones' observations which he described and his experience as a police officer. The direct evidence Officer Jones testified to that he saw Petitioner take a gun from his pocket and throw it to the ground was far more damaging to the Petitioner's case than his opinion that Petitioner fell on his right side to conceal the gun. Petitioner Henderson cannot show prejudice by claiming that but for this minor testimony related to the fall, there was a reasonable probability that he would not have been convicted of the crime. Thus, even if Mr. Epstein was ineffective in his cross examination, Petitioner's claim on this issue fails under the second prong of the *Strickland* test

*(5.) Photo of the scene*

Petitioner next argues that his counsel was ineffective because he failed to get into evidence a photograph of the scene where the arrest and confrontation occurred. The photograph was not admitted at trial because it was not properly authenticated and no other evidence existed to indicate that the photograph accurately depicted the location at the time and date of the arrest. Defense counsel was afforded the opportunity to use the photograph to impeach Officer Stewart during cross-examination. Petitioner has failed to show how the photograph not being in evidence denied him of the right to effective assistance of counsel or that its admission would have created a reasonable probability of a different outcome. Without some conceivable theory as to how these photographs of the scene might have led to a reasonable probability of a different outcome at trial, Plaintiff's conclusory assertions do not warrant a hearing or any relief under § 2255.

Petitioner Henderson concludes his arguments pertaining to the representation of his trial counsel by alleging that the cumulative errors of his trial counsel deprived him of a fair and meaningful defense to the charges. As set forth above, Petitioner Henderson's allegations and arguments are not supported by the record. Petitioner's trial counsel performed due diligence to secure and interview potential witnesses. It is not clear that trial counsel was deficient in his efforts to utilized evidence effectively, cross-examined the proffered government witnesses and advanced a defense to the charges on Petitioner Henderson's behalf. Any failings of defense counsel found under the critical scrutiny of hindsight were not sufficient alone or in

combination to raise a reasonable probability that had they been avoided a different result would have occurred.  Thus, consideration of the commutative effect of all of Petitioner's assertions of trial errors does not meet the second prong of the *Strickland* test, and Petitioner's ineffective assistance of counsel claims should be denied.

### D.      *Alleged Prosecutorial Misconduct*

Petitioner's final claim is that the government prosecutor permitted perjured testimony to

be offered by government witnesses in his case by use of the ATF Agent Nether's affidavit and Officer Stewart's testimony.  Petitioner's claim fails on three separate grounds: waiver, no showing of actual innocence and a finding of credibility by the district court affirmed by the Sixth Circuit.  Given the conclusory nature of these claims, and the fact that he has waived them, Petitioner is not entitled to a hearing on this assertion.

Petitioner claims that the government prosecutor allowed perjured testimony to be used both at the grand jury and at the criminal trial but because he did not raise this issue in his direct appeal, this issue is waived.  Under Fed. R. Crim P. 12(b) and (e) any challenge to the grand jury must be brought before trial or it is waived.   Also, any claims that a prisoner was able to, but did not raise on appellate review are considered waived for subsequent §2255 motions unless the prisoner shows either actual innocence or both "cause" (for failing to raise the issue) and "resulting prejudice." *Bousley v United. States*, 523 U.S. 614, 623 (1998). Showing "cause" means establishing that the prisoner was impeded by "some objective factor eternal to the defense," like official interference making compliance with a procedural rule impracticable, showing that a factual or legal basis for a claim was not reasonably available to counsel, or

25

showing ineffective assistance of counsel. *McCleskey v Zant*, 499 U.S. 467, 493-494 (1991). As noted in *Murray v. Carrier*, 477 U.S. 478, 486 (1986), the fact "that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Thus mere ignorant or inadvertent attorney error is not cause for any resulting procedural default the *Bousley* cause and prejudice test. The error must be sufficiently severe to meet the first prong of the *Strickland* test as discussed above.

While Petitioner asserts his innocence, he has not submitted or proffered any proofs sufficient to show "actual innocence." Nor has he asserted suitable "cause" for failing to raise the issue or any "resulting prejudice." Petitioner fails to show how he or his attorney was prevented by any external factor from raising the issue of tainted testimony. Petitioner was given a copy of the complaint and supporting affidavit of ATF Agent Nether at the date and time of his initial appearance. Subsequently, he was indicted by the grand jury on the criminal charges. At no time prior to the present motion did Petitioner Henderson raise an issue pertaining to the testimony of ATF Agent Nether who submitted the affidavit in support of the complaint on which probable cause was based. Further, Petitioner Henderson did not file a motion with the district court under Rule 12(b) seeking dismissal of the complaint or the subsequent indictment on any specified grounds. Petitioner Henderson's claims regarding the trial testimony of Officer Craig Stewart were not raised on his direct appeal. Petitioner was represented by counsel in his appeal. Petitioner has not made any claim that his counsel on appeal was prevented by some external factor from raising this issue on appeal.

The testimony and evidence offered by the government witnesses were found to be credible. Agent Nether, who submitted the affidavit in support of the complaint, attested to

Magistrate Judge Carlson that the information was true and correct and this substantiated the issuance of the criminal complaint against Petitioner Henderson. Magistrate Judge Carlson, who took the oath from and had the opportunity to assess Agent Nether's credibility, authorized and signed the complaint.

At the time of trial, Petitioner's trial counsel made a motion for a judgment of acquittal pursuant to Fed. R. Crim. Pro. 29, arguing that the testimony of Officer Stewart was not credible. The motion was denied by the district court. The court of appeals, in discussing the testimony of the officers, found that their testimony was not in conflict, and the jury's determination on the issue of credibility would not be disturbed. Petitioner has not shown that he objected to the inculpatory testimony at the indictment and trial stages in a timely fashion, was prevented from doing so, or that the testimony was in fact false.

Even if Petitioner were able to establish "cause" due to attorney error to avoid procedural default, he has failed to proffer sufficient facts to warrant a finding of "prejudice," and thus he has failed to avoid his waiver of these claims. Accordingly, the relief requested under this claim should also be denied.

## III. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Petitioner's motion under 28 U.S.C. §2255 be DENIED. Because this result would not be debatable among reasonable jurists, IT IS FURTHER RECOMMENDED that pursuant to 28 U.S.C. §2253(c) a certificate of appealability should not issue. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Any objections to this Report and Recommendation must be filed within ten (10) days of

its service.  28 U.S.C. §636(b)(1); E.D. Mich. LR 72.1(d)(2).  Failure to file objections within the specified time constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Pursuant to E.D. MICH. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.  Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: October 10, 2008                              s/Steven D. Pepe_____
Ann Arbor, Michigan                              United States Magistrate Judge



Certificate of Service


The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on 10/10/08.


                              s/Jermaine Creary_____
                              Deputy Clerk